UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NILAY KUMAR DEY,

    *Plaintiff*,

v.

MARCO RUBIO, *et al.*,

    *Defendants*.

Civil Action No. 24-00944 (AHA)

**Memorandum Opinion**

Nilay Kumar Dey brings this action under the Administrative Procedure Act ("APA") and the Mandamus Act to compel various government officials to schedule a consular interview and adjudicate his and his family's immigrant visa applications. The defendants move to dismiss the complaint, arguing that the Court lacks subject-matter jurisdiction to hear claims against certain officials and that the complaint fails to state a claim of unreasonable delay. The Court agrees Dey has failed to state a claim and grants the motion to dismiss.

**I.     Background[1]**

According to the complaint, Dey is an accomplished chemist and university department head in Bangladesh who hopes to immigrate to the U.S. through an I-140 petition. ECF No. 1 at 9–10. An I-140 petition is filed with U.S. Citizenship and Immigration Services either by an employer on behalf of a foreign worker or, as here, by the foreign worker himself to acquire an employment-based immigrant visa. *Employment-Based Immigrant Visas*, U.S. Dep't of State,

---

[1] As required at the pleading stage, the Court accepts the complaint's well-pled factual allegations and draws all reasonable inferences in Dey's favor. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

https://perma.cc/22G7-XWJ9 (last visited Aug. 11, 2025). At a high level, the process works like this: once the petition is approved, the individual seeking the visa submits an additional form to the National Visa Center ("NVC"). *Id.* The NVC then asks for fees and various documents. *Id.* Once the NVC has all the materials it needs, it sends the information to a U.S. consulate or embassy abroad and coordinates with them to schedule an interview. *Id.* After the interview, the consular officer must determine whether the applicant is eligible for a visa. *Id.* If the officer issues the visa, the applicant can immigrate to the U.S., where they will receive a green card. *Id.*

Dey submitted an I-140 form in November 2021. ECF No. 1 at 10. The petition was approved a few months later. *Id.* He submitted the required form, fees, and documents to the NVC, which informed him in September 2022 that his file was complete. *Id.* Dey has been waiting for a consular interview since then. He alleges the delay has seriously harmed him and his family. For example, he "received two job offers from the United States, but in both cases, he failed to join the respective jobs in a timely manner due to the delay in scheduling a visa interview," even though he "tried several times to expedite the process." *Id.* Shortly before he filed this complaint, Dey was offered another job in the U.S., but his expedited interview request was denied yet again. *Id.* at 11. As a result, Dey's career is "currently at a standstill." *Id.* He and his spouse have started taking medication to manage the hypertension, anxiety, and depression that have developed because of this stressful situation. *Id.* His son "stopped going to school" because the family believed they would be interviewed soon. *Id.* Dey also alludes to financial burdens that continue to grow while he waits. *Id.* at 12.

Dey brings this action under the APA and the Mandamus Act to compel the government to take action on his and his family's visa applications. *See* 5 U.S.C. § 706(1) (authorizing a court to "compel agency action unlawfully withheld or unreasonably delayed"); 28 U.S.C. § 1361 ("The

district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."). The defendants move to dismiss for lack of subject-matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and (6). Specifically, the defendants argue Dey sued the wrong people and failed to state a claim for unreasonable delay.

## II.   Discussion

To survive dismissal under Rule 12(b)(1), a plaintiff must show that the Court has subject-matter jurisdiction to hear their claim. *See Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008). That includes showing that the plaintiff has standing to pursue that claim. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged,' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citations omitted) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[A] well-pleaded complaint should be allowed to proceed 'even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely.'" *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (second alteration in original) (quoting *Twombly*, 550 U.S. at 556).

**A. Some Of The Named Defendants Are Not Proper Parties**

The defendants argue initially that two of the federal officials sued—the Attorney General and the Acting State Department Legal Adviser—do not adjudicate visa applications and therefore should be dismissed. Their reply brief expands this list to include the Secretary of State, the Deputy Assistant Secretary for Visa Services, and the U.S. Ambassador to Bangladesh. Because this argument has jurisdictional consequences, the Court pauses to consider whether Dey has plausibly alleged that each named defendant is likely to redress the delay. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (observing that "federal courts are under an independent obligation to examine their own jurisdiction"); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement.").

The defendants' argument is unpersuasive as to the Secretary of State, the Deputy Assistant Secretary for Visa Services, and the Ambassador. Courts have found it appropriate to name these officials because, like the named defendants about whom there is no dispute—the Deputy Chief of the U.S. Mission in Bangladesh, the Consul General, and the NVC Director—they can plausibly intervene in the pace of immigrant visa adjudications by directing consular officers or relevant personnel they oversee. *See Al-Gharawy v. DHS*, 617 F. Supp. 3d 1, 10–11 (D.D.C. 2022) (concluding that the Secretary of State is a proper defendant in a visa delay case); *Musaleev v. Bitter*, No. 24-cv-01100, 2025 WL 315148, at *4 (D.D.C. Jan. 28, 2025) (concluding the same with respect to the Deputy Assistant Secretary for Visa Services and an ambassador).

The defendants observe that the Immigration and Nationality Act "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)). That is

4

true, but Dey is not asking the Court to compel the defendants to control the outcome of visa determinations. *See Al-Gharawy*, 617 F. Supp. 3d at 10; *Ahmadi v. Scharpf*, No. 23-cv-00953, 2024 WL 551542, at *4 (D.D.C. Feb. 12, 2024).

The Court agrees with the defendants that the Attorney General and the Acting Legal Adviser at the State Department are properly dismissed. Dey alleges no facts showing either could speed up the adjudication process. In his opposition to the motion to dismiss, Dey draws a tenuous connection between the role of the Attorney General and this delay, explaining that the "Department of Justice's Executive Office for Immigration Review (EOIR) is responsible for conducting immigration court proceedings, appellate reviews, and administrative hearings to fairly, expeditiously, and uniformly administer and interpret U.S. immigration laws." ECF No. 10 at 10. But Dey is not appearing in immigration court, seeking appellate review of an immigration court decision, or participating in an administrative hearing. He seeks a visa, and he has not plausibly alleged that the Attorney General or the Department of Justice has anything to do with that process. The same is true for the Acting Legal Adviser at the State Department. Dey does not connect the dots between an official tasked with providing legal advice and consular officers taking action on a visa application. *See Kahbasi v. Blinken*, No. 23-cv-01667, 2024 WL 3202222, at *4 (D.D.C. June 27, 2024) (dismissing claims against both officials).[2]

### B.  Dey Has Not Stated A Claim For Unreasonable Delay

In cases challenging unreasonable agency delay, "the standards for obtaining relief" under the APA and the Mandamus Act are "essentially the same." *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010). In *Telecommunications Research & Action Center v. FCC*,

---

[2]  The named defendants are sued in their official capacity, so the individuals who currently hold these positions are "automatically substituted" for their predecessors. Fed. R. Civ. P. 25(d).

5

750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"), the D.C. Circuit identified six non-exclusive factors that guide the unreasonable delay analysis:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (quotation marks and citations omitted); *see Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (recognizing that the *TRAC* factors are not exhaustive). These factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 80). Here, the factors favor dismissal.[3]

The first *TRAC* factor is the "most important consideration" and the second factor "gives content to the first." *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 816 (D.C. Cir. 2024) (quotation marks and citations omitted). They evaluate "the extent of and reasons for the agency delay." *Id.* That is, they "get at whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). Here, there is no specified schedule. At most, Congress has expressed its "sense" that "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C.

---

[3] Dey argues that it is inappropriate to analyze the *TRAC* factors at the motion to dismiss stage. ECF No. 10 at 11. However, the D.C. Circuit has affirmed dismissals of visa delay cases based on the *TRAC* factors. *See Da Costa*, 80 F.4th at 340–46; *Mukkavilli v. Jaddou*, No. 23-cv-05138, 2024 WL 1231346, at *2 (D.C. Cir. Mar. 22, 2024) (per curiam).

§ 1571(b). That "language is insufficient to set a deadline" and serves as an "aspirational statement" and "a ruler against which the [agency's] progress must be measured." *Da Costa*, 80 F.4th at 344 (alteration in original) (citation omitted). Assuming Dey's visa counts as an "immigration benefit application," the non-binding congressional aspiration "somewhat favors" him because he has been waiting more than 180 days. *Id.* But, ultimately, in the absence of a specific deadline, "courts typically turn to case law as a guide" to assess the reasonableness of a visa delay. *Sarlak v. Pompeo*, No. 20-cv-00035, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). Courts have recognized "[t]here is 'no *per se* rule as to how long is too long' to wait for agency action." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (quoting *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992)). However, they "have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Sarlak*, 2020 WL 3082018, at *6 (citation omitted) (collecting cases). Dey had been waiting for his consular interview for close to nineteen months when he brought this action in April 2024. Even factoring in the time since he filed his complaint, the delay is still within the range of time courts in this district have concluded is consistent with a rule of reason. It has not reached the "level of disproportionality" necessary to tip these two factors in his favor. *Da Costa*, 80 F.4th at 344.

The third and fifth *TRAC* factors address the interests affected by agency delay, including whether human health and welfare are at risk. *TRAC*, 750 F.2d at 80. These factors tilt in Dey's direction. The complaint alleges meaningful harm to his professional life because of the delay. While he waits for the defendants to adjudicate his visa, he has been forced to forego multiple job opportunities and the situation has taken a toll on his and his spouse's physical and mental health. Dey also gestures at additional financial burdens. These are important interests, and the visa delay

frustrates them. That said, Dey does not allege the type of severe health or welfare threats that could offset the other factors.

The fourth *TRAC* factor asks if "expediting delayed action" will have a harmful effect on "agency activities of a higher or competing priority." *Id.* The D.C. Circuit has noted the importance of this factor. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (observing that the circuit has "refused to grant relief" based on factor four, "even though all the other factors considered in *TRAC* favored it"). That can be especially true in the visa context. *Da Costa*, 80 F.4th at 340. Compelling agency action is disfavored when relief "would necessarily come 'at the expense of other similarly situated applicants,'" with "no net gain" in overall efficiency. *Id.* at 343–44 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016); *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). Here, there is no basis to conclude that prioritizing Dey's application would do anything but reorder applicants and prioritize him over others who have been waiting. Dey does not provide any basis for the Court to conclude that consular processing capacity is anything other than a zero-sum game. Granting relief would simply advantage Dey relative to other applicants; there is no allegation that it would reduce delays more broadly. Because the relief sought entails bumping others who are ahead in the queue, factor four favors the defendants.

The sixth factor asks whether the agency's delay involves any bad faith. *TRAC*, 750 F.2d at 80. There is no such allegation here and accordingly the factor is "neutral." *Afghan & Iraqi Allies*, 103 F.4th at 820 (citation omitted); *see* ECF No. 10 at 18 (disclaiming allegations of bad faith).

Considered together, the *TRAC* factors counsel against relief here. There is no denying the "troubling backlog" of visa applications and the way it disrupts the lives of so many people. *Da*

*Costa*, 80 F.4th at 344. But under binding precedent, the Court must conclude Dey has not stated a claim that entitles him to relief.[4]

### III. Conclusion

For these reasons, the defendants' motion to dismiss is granted and this action is dismissed without prejudice. A separate order accompanies this memorandum opinion.

_____

AMIR H. ALI
United States District Judge

Date:   August 11, 2025

---

[4] The defendants did not "file a certified list of the contents of the administrative record" with their motion as required by Local Civil Rule 7(n). They claim the rule does not apply because "the basis for Plaintiff's challenge is not final agency action, but rather agency inaction." ECF No. 9 at 17 n.3. The Court does not adopt that interpretation of the rule—agency action typically includes an agency's failure to act. *See Janay v. Blinken*, 743 F. Supp. 3d 96, 105 (D.D.C. 2024) (declining to "adopt that categorical view" for the same reason (citation omitted)). The Court dispenses with the requirement here because "the administrative record is unnecessary to decide the threshold legal questions presented by the pending motion to dismiss," and Dey has not provided any reason to conclude otherwise. *Id.*